UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------x
UNITED STATES OF AMERICA,  :  **ORDER DENYING CONDITION OF**
: **SETTLEMENT, GRANTING**
      -against-  :  **REHEARING, AND CORRECTING**
: **AND REAFFIRMING PRIOR**
ALYSHA LOPAC,  :  **DECISION**
:
      Defendant.  :  S5 04 Cr. 119 (AKH)
------------------------------------------------------x

ALVIN K. HELLERSTEIN, U.S.D.J.:

      Following my decision dated January 18, 2006, granting defendant Alysha Lopac's motion for a new trial pursuant to Rule 33 of the Federal Rules of Criminal Procedure, the government submitted a letter dated February 21, 2006, reporting and representing as follows:

1. Contrary to my ruling, the summary chart which formed the basis of the proofs against defendant Lopac (Gov't Ex. 2,000A) was supported by underlying delivery receipts or exhibits, although, the government conceded, one entry turned out to be a duplicate entry and another did not reflect an actual delivery.

2. Contrary to my ruling, the government's summation was supported by the testimony at trial, and by inferences fairly drawn from the evidence.

3. Since my opinion erred in both these respects, I should withdraw my opinion.

4. In addition, since the government and Lopac agreed to a settled disposition, described below, my decision had become academic, and I should withdraw it on that ground, and because, also, the agreed disposition of the parties was conditioned by the government on my agreeing to withdraw my decision.

5. The government and Lopac agreed, based on the condition described above, to the following:

a. The verdict of the jury on Count II of the indictment, finding Lopac guilty of distribution or possession with intent to distribute at least 8.2 kilograms of marijuana, should stand. Lopac had not challenged that portion of the verdict.

b. That portion of the jury's verdict that found Lopac guilty of conspiracy to distribute marijuana should also stand, but the jury's finding as to the weight of marijuana which it was the purpose of the conspiracy to distribute, between 100 and 1,000 kilograms, should be vacated.

c. Lopac should be sentenced as if the Sentencing Guidelines were to be applied to a weight of between 60 and 80 kilograms of marijuana (inclusive of both Count I, as modified, and Count II), yielding a base offense level of 22. Decreasing the offense level by two levels for a safety valve proffer and two levels for Lopac's minor participation would then yield a suggested range of custodial punishment of 27 to 33 months, there being no Criminal History points.

d. Neither defendant nor the government will file an appeal or otherwise re-litigate or seek review of the conviction and a sentence ordered in accordance with the agreement.

\*        \*        \*

I decline to withdraw my prior decision. The basis for my ordering a new trial went beyond the rulings that the government criticizes. The errors need to be corrected, of course, and they are corrected, as discussed below. The parties should now determine their future course in light of this decision, correcting and reaffirming my prior decision.

**Discussion**

Government Exhibit 2,000A, the summary of packages sent by the conspiracy through Federal Express including packages sent to addresses at which Lopac lived and/or worked, did not contain a column showing the exhibits from which the entries were derived. The derivations were not explained to the jury, nor were they evident to me in my own intensive post-trial analysis. I noted the material discrepancies that I was unable to explain in my decision granting defendant a new trial.

The government now provides a revised schedule showing such sourcing, and contending that all deliveries, save two, are traced to exhibits. However, after another thorough comparison of Exhibit 2,000A to the evidence, a number of discrepancies still remain.

There are four packages that the government summary chart attributes to Lopac for which there is no evidence of delivery to addresses at which Lopac lived and/or worked. The entry in the government summary chart for box #58 is an erroneous duplicate of another package. The government noted this duplication in its letter and at trial. There is no evidence of delivery for box #29. The lack of evidence is correctly shown in the government summary chart (Gov't Ex. 2,000A line 29) and noted in the government letter, but was not drawn to the jury's attention during trial. There is no evidence of delivery of box #33. The government summary chart indicates that box #33 was delivered and signed for by L. Bigalow (Gov't Ex. 2,000A line 33). There is, however, no evidence of delivery of box #33 (Gov't Ex. 1,800A, Gov't Ex. 1,800B, Gov't Ex. 1,800C). There is no evidence box #111 was delivered to an address at which Lopac worked and/or lived. The government summary chart indicates that box #111 was addressed to East 30th Street (Gov't Ex. 2,000A line 111). The evidence showed that the

package was actually addressed to West 76th Street (Gov't Ex. 1,800C line 170). Lopac was no longer living at West 76th Street at the time the box was shipped.

There are additional inconsistencies between the government summary chart and the evidence, including incorrect consignees (compare Gov't Ex. 2,000A line 68, with Gov't Ex. 1,800C line 91), incorrect shipment dates (compare Gov't Ex. 2,000A line 75, with Gov't Ex. 1,800C line 82; compare Gov't Ex. 2,000A line 76, with Gov't Ex. 1,800C line 79), and incorrect signator names (compare Gov't Ex. 2,000A line 6, with Gov't Ex. 1,800C line 137; compare Gov't Ex. 2,000A line 82, with Gov't Ex. 1,800C line 84; compare Gov't Ex. 2,000A line 83, with Gov't Ex. 1,800C line 47).

Even assuming the government summary chart did not contain these errors, the underlying evidence proves problematic. For eleven of the packages (Gov't Ex. 2,000A lines 66, 68, 69, 70, 71, 75, 76, 80, 81, 92, 93), the only evidence of delivery is another summary chart (Gov't Ex. 1,800C), provided to the government by Federal Express and, on that basis, introduced into evidence. Government Exhibit 1,800C does not contain signatures. For another eight packages (Gov't Ex. 2,000A lines 18, 20, 21, 27, 44, 56, 57, 65), there is no signature either because Federal Express was unable to locate the signature record or because the signature was waived by the sender.

This is not to say that the proofs are consistent only with innocence. Twenty of the twenty-eight boxes for which delivery receipts with signatures were admitted into evidence show signatures that, to the viewer, appear to match Lopac's signature. Arguably, another four might also be attributable to Lopac, for though these were delivered to her West 76th Street address after she moved from there and Powell took over her lease, they show signatures that, to the viewer, appear to match Lopac's signature. But these are very raw matches, made by the

4

judge in chambers. The jury was not shown the underlying documents, and did not make signature comparisons.

In my decision granting a new trial, I analyzed the case law requiring the government to prove both knowledge and intent, each beyond a reasonable doubt, in proving that the defendant joined an ongoing conspiracy. The extent of Lopac's furtherance of the conspiracy in receiving packages containing marijuana, and the nature and depth of her state of mind in accepting such packages, were crucial components of proof, requiring precision as to acts of acceptance and appropriate and specific instructions in dealing with such proofs. The proofs, however, did not allow such precision, not in the presentation of evidence, nor in argument, nor in my own jury instructions. A new trial is required because "the interests of justice so require." Fed. R. Crim. P. 33.

I did not intend to criticize the Assistants United States Attorney who tried the case, for their work was up to the very high standards that one expects from that office. The government experienced a difficulty from the nature of electronic information received from Federal Express. Documents received in electronic form by way of images (PDF, or portable document format, for example, or TIFF, or tab image file format), as these were, are not "bate-stamped" and, when received en masse, as the government did from Federal Express, present difficulties in being translated into exhibit form, which requires each document to be separately identified and numbered. The difficulty is compounded when, as in this case, the government received much of the documentation on the eve of trial. Thus, it became difficult for the government to account for specific delivery entries, and it became difficult for me, in my post-trial review, to understand all the connections.

Having said this, a basic problem still remains, for the lack of precision in accounting for specific receipts and the lack of signatures make it impossible to have a firm conviction that the jury fairly arrived at its verdict. The government is not to blame, but a new trial (or proper alternative disposition) remains necessary.

Accordingly, I withdraw specific comments criticizing the government's trial procedures and arguments. The government has satisfied me that its summary schedule was fairly based on underlying exhibits. However, one such exhibit was itself a summary and other issues remain. For the reasons stated, my order for a new trial stands.

Regarding the government's summation, I took issue with the government's argument that Lopac saw customers going in and going out of the Brooklyn house, for there was no testimony that business was going on during her three visits. Powell was not asked that question, and he easily could have been asked the question if the government wished to argue that Lopac saw the business she arguably was helping by receiving packages. And other statements were of like nature.

However, the government is correct that rhetoric as to the meaning of proofs is entitled to certain latitude, particularly when the other side does not object and is free to argue the converse. Were this not such a close case, and were I not to have the concerns expressed in the earlier part of this decision about the relationships of specific exhibits and summary charts, I would agree with the government's point. But the closeness of the case, and the concern that rhetoric may substitute for proof and cause an unfairness in result, caused me to be concerned about the integrity of the verdict. My concern is not that the Assistants United States Attorney did wrong, for I believe strongly that they did not; or that a trial has to be perfect in order to stand, for I have participated in enough trials as an attorney and as a judge to know that

perfection is elusive. My concern, rather, is that "letting [the] guilty verdict stand would be a manifest injustice." United States v. Ferguson, 246 F.3d 129, 134 (2d Cir. 2001). Accordingly, I reaffirm my decision that defendant Alysha Lopac deserves a new trial.

### Conclusion

For the reasons stated, I do not accept the condition of defendant's and the government's agreed disposition that I withdraw my decision. I treat the government's application as a motion for reconsideration and, upon reconsideration, correct my decision in the respects indicated and reaffirm my conclusion that defendant Lopac is entitled to a new trial of Count I of the indictment, the conspiracy count.

The parties will meet with me in Conference on April 4, 2006 at 10 am, to advise me how they wish to proceed. Time is excluded until the conference, pursuant to Section 3161(h)(1)(J), Title 18, United States Code, and the time for the parties to file a full motion for reconsideration or to seek other relief is also extended until that date, and such later time as may then be fixed.

SO ORDERED.

Dated: New York, New York
March 14, 2006

ALVIN K. HELLERSTEIN
United States District Judge